KATHERINE A. WALKER, APPELLEE, v. MILTON BURCH ET AL., APPELLANTS: LINCOLN TRUST COMPANY ET AL., APPELLEES.

FILED MAY 15, 1920. No. 20617.

1. **Husband and Wife:** AGENCY: PRESUMPTION. Whether or not the husband is the agent of the wife in dealing with her separate property is a question of fact to be determined as other like questions, and will not be presumed from the marital relations alone.

2. **Vendor and Purchaser:** RESCISSION: FALSE REPRESENTATIONS. "A false representation by the vendor of land situated in another

state, as to the character, location, and value of the property, relied on by the vendee, who had no other knowledge, is ground in equity for rescinding the contract." *Ross. v. Sumner*, 57 Neb. 588.

3. ———: ———: LACHES. An action to rescind on the ground of fraud must be brought within a reasonable time after the discovery of the fraud.

4. Evidence examined, and *held* to support the findings and decree of the trial court.

APPEAL from the district court for Pierce county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Fawcett, Mockett & Walford* and *J. J. Ledwith,* for appellants.

*Steck & Steck* and *O. S. Spillman, contra.*

DAY, J.

The plaintiff seeks a rescission of a land trade between herself and defendants Burch, also a quieting of the title in the land deeded by her, and for an accounting. She bases her right to the relief prayed for upon the ground of fraud. In the district court there was a decree in favor of the plaintiff, to review which the defendants have appealed.

Two main questions are presented by the record for determination: First, was fraud practiced by the defendant Milton Burch in procuring the exchange of the lands? and, if so, second, was there a rescission of the trade by the plaintiff within a reasonable time after the discovery of the fraud?

The record shows that on and prior to June 26, 1915, the plaintiff was the owner in her own right of a 280-acre tract of land in Pierce county, Nebraska, and the defendants Burch were the owners of about 70 acres situated in the lower Rio Grande valley, in Hidalgo county, Texas. The Burch land was improved with a brick house, built in bungalow style, with other necessary and convenient buildings, and is described by some

104 Neb.—38

of the witnesses as being one of the "show places" of the valley. Mr. Burch had lived upon this place for a period of over two years, but had not been there, however, for about a year prior to the trade. The plaintiff had never been in Texas, and knew nothing of the value of such land, and was unacquainted with the general conditions.

On June 26, 1915, the plaintiff traded her Nebraska land for the defendants' Texas land. In the trade the plaintiff's land was valued at $80 an acre, and the defendants' land at $350 an acre. There was a mortgage of $4,400 upon the plaintiff's land, and to equalize the difference in values of the respective tracts, the plaintiff and her husband executed to the defendants vendor's lien notes, aggregating $7,300 payable in annual instalments from March 1, 1916, to March 1, 1922.

It further appears that the plaintiff's husband, Myron D. Walker, had, for some time prior to the trade, been in the employ of certain land companies, engaged in selling land in the lower Rio Grande valley, and in the vicinity of the Burch place, and had on several occasions accompanied the crowd of prospective purchasers to view the lands offered for sale, and had frequently visited the Burch place. In this manner he became acquainted with Mr. Burch, and more or less familiar with the Burch land and the general conditions of the country.

A few days prior to the trade Walker, without the knowledge of his wife, entered into negotiations with defendant Milton Burch for an exchange of the Pierce county land for the defendants' Texas land. Mr. Burch examined the Pierce county land, and negotiations were carried so far that Burch and his wife executed a deed to the Texas land, naming the plaintiff as grantee therein. Burch and Walker then went to Sioux City, Iowa, where the plaintiff resided, to have the plaintiff execute a deed to the Nebraska land and complete the trade. There is a sharp conflict in the evidence as to what was

said between the parties at the time the trade was consummated. Burch's version of the transaction was that he told Mrs. Walker that he and Myron (plaintiff's husband) had been talking of exchanging lands, and that Myron knew more about the Texas land than he did, and that Mrs. Walker then stated that she was willing to rely upon her husband's judgment in the matter, and, acting thereon, she executed and delivered the deed. We are convinced, however, that the preponderance of the testimony supports the plaintiff's version of the transaction. Her testimony, and which is corroborated by her son, is to the general effect that Burch represented to her that the Texas land was worth $350 an acre; that he had refused a cash offer of $26,000 for it; that the property would rent for from $1,000 to $1,200 a year; that it was a peaceable, quiet neighborhood, composed mostly of Americans; and that the newspaper stories with respect to trouble on the border were "hot air." The plaintiff testifies that in making the trade she relied upon the representations made to her by defendant Milton Burch, and believed them to be true. Undoubtedly Mr. Walker was in sympathy with the trade, and was desirous that the deal should go through, and, but for the positive assertion of Mrs. Walker that she relied upon the statements of Mr. Burch, we would incline to the view that she was relying upon her husband's judgment in the matter. Usually the wife accepts the judgment of the husband in matters pertaining to business, both with respect to his as well as her own property; and yet it is common knowledge that this is not always the case. Numerous cases are found in our own reports where the wife has refused to sign a deed to carry out a contract of sale made by the husband.

The testimony shows that the representations made by defendant Milton Burch with respect to the value of the land and the amount for which it would rent were greatly exaggerated. It was shown that the fair rental of the Texas land was about $700 a year, out of which the

owner paid the water rent, ranging from $4 to $6 an acre, depending upon the character of the crop. Upon the question of the value of the land, there is a wide difference of opinion between the several witnesses, but we conclude the value of defendants' land to be from $200 to $225 an acre.

It is the defendants' contention that the trade was made by Mr. Walker, and that he was acting as the agent of his wife in the transaction. Upon this question the plaintiff testifies that she had never authorized her husband 'to sell or trade her land, and knew nothing about it until Mr. Burch appeared at her home to close up the trade. The agency of the husband to deal with the separate property of the wife is a question of fact to be determined like all other questions of fact, and will not be presumed from the marital relations alone. *Rust-Owen Lumber Co. v. Holt*, 60 Neb. 80. We conclude that the testimony fails to show that Mr. Walker was the agent of his wife in making the trade. Upon this phase of the case, we are of the opinion that the facts establish fraud such as vitiates the transaction.

Did the plaintiff rescind the contract within a reasonable time after the discovery of the fraud? It appears that in September, 1915, the plaintiff requested her husband to look after the rental of the Texas property for her for the year 1916, and shortly thereafter she learned from him that the land could not be rented for the sum named by Burch; that the amount of rent obtainable was only $700 a year, the owner to pay the water tax, which amounted approximately from $4 to $6 an acre, depending upon the character of the crop. By failing to act within a reasonable time upon receiving this information from her agent, the plaintiff no doubt waived her right to rescind the trade based upon the misrepresentations in regard to the rental value of the land. There is no testimony, however, that at that time she ascertained that the value of the land was not as represented by Mr. Burch. Conceding that Walker may

have known that the value of the land was not as represented, his knowledge with respect to that subject could not be imputed to the plaintiff upon the doctrine of agency alone, and there is no proof that Walker ever actually communicated this fact to her. He was employed to rent the land. Knowledge which came to him within the scope of that employment would be the knowledge of his principal; but beyond that the principal would not be bound, unless the information was actually communicated to the principal. If Mrs. Walker had employed a stranger to look after the rental of her land, it would hardly be claimed that the knowledge of such person with respect to the value of the land would be her knowledge so that she would be bound to act thereon. The fact that her agent was her husband does not change the situation. The record is not entirely clear as to just when the plaintiff discovered that other representations made by Burch were untrue. In answer to a question upon this subject, she testifies: ''I did not personally know any of these things, except that I was not getting as much rent as he said I would, until just before starting this suit I learned he had lied about all these things.'' As to how or when the plaintiff obtained this information, the record is silent. It is shown, however, that Burch still claimed that the land was worth the amount stated by him. In a letter dated October 3, 1916, written to the plaintiff's mother, who was contemplating advancing a sufficient sum to take up the past-due notes, Mr. Burch states: ''I have been offered $30,000 cash for that farm. At that time, would not sell it, but afterwards made up my mind that I could not take care of same and travel around as I was doing, so I traded the farm to Myron. It would be a terrible thing for them to lose this place, as much of the land in that country, not as nice or good land, is selling as high as $1,000 per acre, and your security on that place would be absolutely good, for more than double the

amount which they owe me." A copy of this letter was sent to the plaintiff by Burch.

The vendor's lien notes given by the plaintiff contained a reservation that if the taxes or interest or any of the notes were not paid when due, the vendor had a right to declare the entire sum due. The plaintiff failed to pay the note due March 1, 1916, and the defendants elected to declare the entire sum due, and suit was brought upon said notes in El Paso, Texas. While the suit was pending, and in September, 1916, the plaintiff and her husband entered into a contract with the defendants Burch, by the terms of which they agreed to, and did, execute a deed to the Texas land to the Lincoln Trust Company, trustee for Milton Burch, conditioned that, if Walker and his wife should pay all of the costs of the case pending in El Paso before the 1st day of November, 1916, and should pay the Lincoln Trust Company, trustee, all of the vendor's lien notes which were past due, with interest, on or before January 1, 1917, and should also execute and deliver to said trust company vendor's lien notes to take up the vendor's lien notes held in the name of Milton Burch, the trust company should return to Walker and his wife the warranty deed named; that if Walker and his wife failed to comply with the terms of the agreement, then and in that case the company should file the warranty deed of record in Hidalgo county, Texas. The plaintiffs failed to make the payments as agreed, and on January 6, 1917, the trust company mailed the deed to the recorder of Hidalgo county, Texas, for record. Under this title, Mr. Burch has again sold the land. A false representation made by the vendor of land situated in another state, as to the character, location, and value of the property, for the purpose of inducing a purchase, and which is relied upon by the vendee, who had no other knowledge, is ground in equity for rescinding the contract. *Delorac v. Conna,* 29 Neb. 791; *Ross v. Sumner,* 57 Neb. 588.

It is claimed by the defendants that an action for rescission cannot be maintained, because the plaintiff has not offered to rescind and reconvey the property. The bringing of the suit to rescind the contract is a sufficient notice, and, as the defendants have repossessed themselves of the Texas land by filing the deed, it would seem to be a useless procedure for the plaintiff to offer back to the defendants that which they already had. The case is one, which frequently occurs, where the court would gladly welcome additional light upon some of the questions presented, but we are compelled to act upon what is before us.

Upon the phase of the case relating to the accounting, we are of the opinion that the findings of the trial court are sustained by the evidence.

From an examination of the entire record, we are satisfied that the findings and decree of the district court are sustained by the evidence.

The judgment of the district court is

AFFIRMED.

LETTON and FLANSBURG, JJ., not sitting.